Good morning, Judges. I may please the Court. My name is Brian O'Gallagher, appearing on behalf of the Appellant A1 Roofing. And Mr. O'Gallagher and counsel for the appellee, I just want to make sure that both of you are aware that it's 15 minutes for each side. You can save a portion of that for your rebuttal. Certainly, Judge. As the Court is aware, this case arises out of a construction accident dispute. On the construction project, my client, A1 Roofing, was the general contractor. A1 subcontracted the steel, erection, and fabrication work to a subcontractor, Jack Frost. And then Jack Frost, in turn, I'm sorry, Judge. Well, we're really going on what the cases are and whether those cases control this case. And both LJ Dodd and National Fire, why did the judge feel that his hands were tied by National Fire or LJ Dodd? I don't know that the judge felt his hands were tied by LJ Dodd, Judge, or National Fire. So he ruled that, well, what was his ruling? That there was sole negligence on the part of the general contractor. That can't be the case. Correct. I think you're right about that. So he had to have ruled that there was no negligence on the part of the subcontractor, the primary insured. And therefore, in the absence of any negligence on the subcontractor's part, the general contractor couldn't invoke that policy. You're right. Why? Well, because he was confused about what the term, quote, your work, close quote, meant in the context of the Nautilus policy. Because Judge Agerin, respectfully, what I would suggest the mistake he made was he looked at the pleading, he didn't see Jack Frost mentioned anywhere in it, and then he concluded there's nothing here pertaining to the named insured's conduct. Therefore, even really without getting, I think, to Dodd and Walsh, he said I just have nothing here to tie the conduct alleged against A1 to the named insured Frost, and therefore I've got to enter summary judgment in favor of Nautilus. I think the mistake he made And based on what? Based on the language of the policy that the subcontractor had with the insurance company? By comparing the allegations of the complaint to the policies, really was pretty much what he did. Right, but what he did was he accepted, I think, and again, I Well, the allegations really, you can't compare absence of negligence to the policies. He had to have seen the policy. The policy says, if the policy had said there must be negligence attributable to the direct insured in order for the general contractor to invoke coverage under this policy. And if there is no language like that, then I don't see how, we all know what the complaint says. The complaint says nothing about Jack Frost. I agree with you. I think he read a negligence requirement into the additional insured endorsement that was not there. There is a requirement in cases like Walsh. In the initial insuring grant for the additional insured, you'll note in the Walsh case, it ties coverage for the additional insured to the named insured's negligence. This policy, this endorsement does not do that. This endorsement uses the arising out of language, but it ties the arising out of to the term your work. And to the extent, respectfully, I suggest Judge Aker made a mistake. I think his mistake wasn't necessarily in his failure to appreciate or his approach in looking at the complaint. I think the mistake was, what is your work in the context of that additional insured endorsement? Because it's very, very clear that the term your work includes, in this case, the work performed by Frost's own subcontractor. It has to, because the policy defines the term your work in the coverage form. It says your work means work or operations performed by you or on your behalf. You, here, is Frost. On your behalf is somebody other than Frost, i.e., the subcontractor that Frost retained, to perform a portion of the work. So let me ask you this. Do you think the problem here was that enough discovery wasn't developed? Or maybe, you know, the relationship between Jack Frost and the subcontractor that was attributable for fault in the complaint wasn't made clear? Not necessarily just because. I don't think it was contested. I think Nautilus and Frost conceded throughout the proceedings that BSE, the contractor that was alleged to be negligent, was the sub-subcontractor of Frost. In their brief, in this court, they state BSE was the erection subcontractor. I don't think it was a discovery issue. In the record was the contract from A1 to Jack Frost and the subcontract from Frost to BSE and the invoice from BSE where BSE actually leased the boom lift that was involved in the unfortunate accident. So I don't think it was a discovery issue, Judge. I truly think it was a failure to really give proper consideration to the term your work and what the term your work means. So that's the narrow, that's what we're really looking at. The scope of that, that's your work. Because once you conclude that your work, which is the term used in the additional insured endorsement that kind of sets the parameters of coverage, once you conclude that that term, your work, includes BSE's work on this construction project, then with due respect, their position falls apart. And do you really have to, do you really have to have a case that says that your work includes the subcontractors, or do we can rely on the general rule that unless it's free and clear from doubt, it goes the other way? Exactly, Judge. If there was, I mean, first of all, I would tell you, you don't necessarily need a case. And they quibble with some cases we cited. We cited some cases that get to this issue in the property damage context. Honestly, Judge, I think it's so clear. It makes sense to me why there isn't a lot of cases on it, because the CGL form defines your work, and it says operations performed by you or on your behalf. That can't mean anything other than the name insured and the name insured subcontractor. All right. Well, thank you very much. We'll give you time for rebuttal. Thank you. Good morning, Your Honors. Dan Costello on behalf of Navigator's Insurance and A1, or Jack Frost. Really what this case boils down to is there's two elements that they need to overcome. First, they need to overcome rising out of your work. And the second thing they need to overcome is sole negligence. In this case, they can't prove either. I'm sorry, what was the second one? That they have to prove that the sole negligence that they overcome is sole negligence exclusion. I think in counsel's argument in their brief, they say that it doesn't come to that, but they explain it. Well, let's go with the easy one. Sole negligence of A1. It can't be sole negligence of A1 when BS, whatever the other company, subcontractor, subcontractor was the truly responsible party. So it can't be the sole negligence of A1. Well, Your Honor, I think that sole negligence, as defined by the policy, is the relationship between the additional insured and the named insured. It doesn't go to all the parties that might be involved in the case. If you look at all the case law that this Court has determined, and if you look at the policy, I mean, if we look at all the other cases, the Walsh case, there were multiple parties. We know what Walsh was about. We know that the employee of Walsh himself was the causation party. He did something. And then L. Dodd, same situation where the employee of the general contractor ran over someone with a forklift. I mean, that's sole negligence. And I'm not saying that sole negligence, you know, can't be. Maybe I am saying sole negligence cannot include someone else because then we rely on those general rules that say if it's not clear and free from doubt, then you've got to keep that party in, or you've got to let the insurance company defend it. Well, Judge, one of the things that I would point to is specifically the policy says, neither the coverage as provided by the policy nor the provision shall apply to any claim arising out of the sole negligence of any additional insured or any of their agents or employees. That contemplates more than one additional insured, and that means there could be more than one party who would be negligent. If you look at Webster's definition, any would be used to indicate an undetermined amount or person. So ultimately when we're talking about sole negligence, we're talking about the relationship between the insured and the additional insured, and there might be more than one additional insured that are contemplated. If you look at the cases as far as Walsh, if you look at Holte or Rosick, there were multiple parties that were involved in that other case, and what the courts were considering was the relationship between the insured's conduct and the party seeking additional insured status. And that's what we have here. Essentially, if they get past the arising out of which I don't believe they can in this case, and we go to the sole negligence, then if we're talking about sole negligence, we're talking about whether or not the conduct of A1 standing by itself in relation to the conduct of Jack Frost is the sole negligence that would apply under the policy. What does on behalf mean then? As far as the... In terms of this policy, on your behalf, work or operations performed, doesn't it say by you or for you or on your behalf? It says for that insured, by or for you. I mean, I guess the other thing that they're expanding upon as far as what they're asking... What does the on your behalf mean? I think that means that there would be work that would be done by somebody else in further... By someone else? It could include somebody else that would be done in furtherance of your work on the program. Well, now aren't you adding some words? Or why doesn't that include a subcontractor that Jack Frost hired? Because Jack Frost has this responsibility to complete this portion of the work. If they could have done it themselves, they would have done it themselves. But instead, they hire a subcontractor to do that portion of the work they can't do themselves. So why, as Justin McBride asked, why doesn't that subcontractor fall under that provision on your behalf? Well, I think that ultimately there are certain situations where it can. This is not one that it does. I mean, ultimately, if you look at this case as far as the spectrum, Jack Frost was not named in the underlying complaint. They're not named in a third-party complaint. There are no allegations in the underlying case that their work in any way, positively contributed to this accident. We have not our subcontractor's employee that was injured, not our employee that was injured. It was an employee from somebody, a complete third party who had a contract directly with the general contractor who was injured. And what they're asking the court to do is to go beyond and look at underlying facts and be a fact finder in this case and basically say that this person who used the lift was an unauthorized lift. If you look at the actual only evidence in this case, he took an unauthorized lift during lunch break to do work that wasn't on our behalf or for us, and he was injured. And what they're saying is based upon that, that was work that wasn't being done for us or wasn't being done for our subcontractor, that the insurer should have to be responsible for that. This is the furthest extent that you can possibly take any of those cases, that saying that this arises out of our work or something that's not done for us, isn't done in furtherance of our work, that that, just by the fact that we had a contract on this project, means that it arises out of our work. To the extent that Jack Frost brought those individuals onto the work environment, and it sounds like a but-for argument. Well, I think that what the court, what this court has said on many occasions is if there's an exclusion that's directly on point based upon... That is our concern, whether it's directly on point. Right. I think that we don't even get to the but-for analysis based upon the fact that the exclusions are directly on point here. Although the court doesn't have to have judicial blinders on, it depends on how far the court's going to go in a fact-finding expedition to make some type of causal link. That was my other point, because I don't know that we have to do any fact-finding. I think the fact-finding falls on the party that's moving for summary judgment or declaratory judgment, and if they can't prove facts that are clear and free from doubt, it goes the other way. Well, I think in this case the trial court probably ruled that there weren't sufficient facts in order to say that it's clear and free from doubt that there should be coverage. In this case, excuse me for interrupting though, Jack Frost is not named in the underlying complaint. True. But A-1 is named in the underlying complaint. That is true. A-1 is an additional insured under the Jack Frost policy. Yes, with limitations. Yes, with limitations, and there is a bar of coverage arising out of work. Only though, the bar is if it's the result of the sole negligence of A-1. I think that there's two limitations. The first is the arising out of, and then if they overcome that threshold, then we go to sole negligence. The reason why there's limitations. All right, taking the second prong first. In this complaint, we do have an allegation against the additional insured, but we also have allegations against other parties. Yes. So how do you get to the sole negligence when you have these other parties? Well, like I said, I think that all the case law that, as far as, if we look at Polte, if we look at Rosick, if we look at Pekin versus UPS, all those cases had other parties involved. The typical landscape that comes before this court is there's almost always other subcontractors that are on a project. You have a general contractor, and then he has other people doing work, and so you have a cascade of other characters who are involved, and that's how the additional insured coverage arises. What they're asking you to essentially say is that the only situation where that we would be able to effectively deny coverage is if they're the only person on the job site, and if they're the only person who is doing work, then that's the only situation where we can deny coverage, and that's not what the endorsement says. Endorsement has limiting language specifically so that the insurance company can determine what risk they're riding, and it's got to bear some reasonable relationship to the work of their insured, not to the general contractor. It would be impossible to underwrite the risk if we don't know essentially what the conduct is going to be that arises that triggers the duty to defend and identify. But how can you come to the conclusion that you can reach this issue that you just talked about, about this subcontractor other than A1? Was that performing the work on behalf of your client? How can we reach that? How can you reach that as a matter of summary judgment? Well, I think that there's a couple things. It depends on what this court is allowed to review, and I know that there's been some changes since this was ruled on by Judge Agron as far as the Pekin versus Wilson case and we talked about the Pulte case. But I think that ultimately the court can only look at what's relevant, the relevant documents. And if you look and you try and reconcile Pulte with what we have here, Pulte looked at the complaint, looked at requests for admissions, and it looked at the contract. And based upon those documents, in addition to the insurance policy and the complaint, it said that those relevant documents allow that there be a finding that there's potential duty to defend. But that's because a summary judgment proceeding generally allows that in any other context. The court is permitted to look at all of the documents on file. That's the general principle behind summary judgment. And there are cases, going back further than Pulte, that indicate that on a summary judgment, the court should be allowed, even in this sort of coverage situation, to look at all the documents on file to decide whether or not the party is entitled to judgment as a matter of law. So I don't think that that principle is really entirely new and it has been used previously in the insurance context when one party is seeking summary judgment as a matter of law. I would agree with you. I think really what we're talking about is the relevant documents. Where are you getting that from? What case says the relevant documents? It says the court on a summary judgment can look at all the documents on file, including depositions, pleadings, what have you. But I don't remember any case ever saying but only the relevant documents. And I understand what Your Honor is saying. I guess the reason I'm trying to make a distinction here is they're trying to assert that there is factual evidence in this case that it indeed arose out of our work and they're citing to an affidavit, which I think is actually miscited too, but they're citing to an affidavit of an expert that draws conclusory statements as far as whether or not this arises out of our work. And I think that similar to any other motion for summary judgment, that wouldn't be considered relevant evidence as far as conclusions of law that are in that particular opinion. Well, you're right on that. So you want us to come to the conclusion that the work that was performed by this subcontractor was not performed on your behalf? The work that was performed on our subcontractor, what the proportions of it were, the act that actually caused the injury to this gentleman was him unauthorized borrowing a lift. He borrowed a lift during a lunch break. When I say borrowed, that's a generous term. He used it without permission. He had it fully elevated and he was injured. We didn't give permission for him to do that. Our subcontractor didn't give permission for him to do that. He took the lift. And the only evidence in this case is that they said that a deal could have been worked out, but it was an unauthorized use. So that does not fall under our work. And we can come to that conclusion as a matter of law. I think that if you're able to review all of the relevant evidence in this case,